IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| KATHRYN T. HOLLIS, *ET AL.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 1:15-cv-290 (JCC/JFA) |
| | ) | |
| LEXINGTON INSURANCE COMPANY, | ) | |
| *ET AL.*, | ) | |
| | ) | |
| Defendants. | ) | |

## M E M O R A N D U M   O P I N I O N

This matter is before the Court for declaratory judgment regarding an insurer's obligations under a "per occurrence" commercial general liability insurance policy. Plaintiffs suffered injuries in a fireworks accident and hope the insurer will satisfy the judgment they might receive in state court for those injuries. To that end, Plaintiffs motioned for summary judgment seeking a declaration that their injuries arise from multiple "occurrences" within the meaning of the insurance policy. The insurer cross-motioned for summary judgment for a declaration that the Plaintiffs' injuries arise from a single occurrence, for which it has exhausted its indemnification obligation. An excess insurer also cross-motioned for summary judgment seeking a declaration that its indemnification obligation is limited to $4 million, regardless

1

of the number of occurrences.  For the reasons described below, the Court holds that the Plaintiffs' alleged injuries arise from a single occurrence.  Therefore, the Court will deny Plaintiffs' motion for summary judgment, will grant the insurer's cross-motion for summary judgment, and will deny the excess insurer's cross-motion for summary judgment.

## I.        Background

The injuries alleged in this case occurred at a fireworks show in Vienna, Virginia on the Fourth of July in 2007 ("fireworks incident" or "the accident").  (SOF ¶ 1.)[1]  During the show, a twenty-five shot "barrage cake"[2] firework exploded unexpectedly, causing a three-inch mortal shell to launch directly into the crowd.  (SOF ¶¶ 3, 5.)  The powerful shell detonated inches from Plaintiff Kathryn Hollis and her two sons Alexander and M.H.[3]  (SOF ¶ 5.)  The explosion caused Kathryn and M.H. to suffer severe burns and brain injuries and burned Alexander.  (SOF ¶¶ 6-8.)

---

[1]     Citations to "SOF" refer to undisputed facts contained within Defendant Lexington Insurance Company's Local Rule 56(B) statement of facts.  (*See* Lexington Mem. [Dkt. 41] at 2-10.)

[2]     A "barrage cake" is "a pre-manufactured set of fireworks mortar tubes that are chain fused together to ignite in rapid sequence."  (Kathryn Compl. [Dkt. 1-3] ¶ 26.)

[3]     To avoid confusion between different members of the Hollis family, this memorandum opinion will refer to the family members by their first names or initials to identify an infant.

After the accident, Kathryn filed a lawsuit in the Fairfax County Circuit Court against the various parties involved in the fireworks show, including the company hired to perform the show and its president and employee, several Chinese fireworks manufacturers, Vienna municipal employees, and firefighters. (Kathryn Compl. [Dkt. 1-3].) Prior to trial, Kathryn settled her claim against the employee of the company hired to perform the fireworks show. (Kathryn Judg. [Dkt. 1-4].) A jury ultimately awarded Kathryn a verdict of $4,750,000 after finding that the fireworks company, Schaefer Pyrotechnics, Inc. ("Schaefer"), and its president were negligent. (*Id.* ¶ 5.)

Kathryn's older son, Alexander, filed a lawsuit for his injuries and received a jury verdict of $45,000 against Schaefer and its president for their negligence. (SOF ¶¶ 19-20; Alexander Compl. [Dkt. 1-5]; Alexander Judg. [Dkt. 1-6].)

In December 2013, Kathryn and her husband filed a substantively identical lawsuit ("Underlying Complaint") on behalf of their infant son, M.H (collectively "Plaintiffs").[4] (SOF ¶ 21; Underlying Compl. [Dkt. 1-7].) Like the prior two lawsuits, the Underlying Complaint alleges that Schaefer, its president, and its employee Jacqueline Gass (the "Insured") were

---

[4]     Plaintiffs also allege that M.H will file a lawsuit on his own behalf when he reaches maturity. (SOF ¶ 24.)

3

negligent or grossly negligent during the several months between the time they sought to acquire fireworks from China and the time the shell exploded in the Vienna crowd.  Specifically, the Underlying Complaint alleges that the Insured breached their duties to: properly hire, supervise, and train employees handling fireworks; follow all appropriate laws and regulations pertaining to the purchase, care, transportation, display, and ignition of fireworks; establish appropriate safety "set backs"; warn spectators of known dangers; purchase only the highest quality fireworks; ensure the fireworks were safe; take appropriate measures to protect spectators from fireworks failures; properly inspect fireworks; properly test fireworks; ignite fireworks only under safe weather conditions; follow appropriate safety precautions; use ordinary care; heed warnings from fire professionals; and adjust for complications at prior shows at the Vienna location and other shows.  (Underlying Compl. ¶¶ 114, 120-128.)  The Underlying Complaint also alleges that Schaefer and its president were liable for strict liability, public nuisance, breach of express/implied warranty, and negligent design.  The state court stayed Plaintiffs' tort lawsuit pending this Court's determination of insurance coverage.  (SOF ¶ 23.)

4

At the time of the fireworks incident, Defendant Lexington Insurance Company ("Lexington") insured Schaefer through a per-occurrence commercial general liability policy ("Primary Policy"). (SOF ¶ 28; Primary Policy [Dkt. 1-1].) The Primary Policy covers bodily injury and property damage caused by an "occurrence." (SOF ¶ 33; Primary Policy at 5.) An occurrence is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (SOF ¶ 34; Primary Policy at 22.) The policy covers up to $1 million per occurrence and $2 million in aggregate. (SOF ¶¶ 28, 35.) Lexington's duty to defend and to indemnify terminate when it has "used up the applicable limit of insurance in the payment" of judgments or settlements for bodily injury claims. (Primary Policy at 5.) At the time of this lawsuit, Lexington has paid $1 million under the Primary Policy to satisfy judgments for bodily injuries arising from the fireworks incident. (SOF ¶ 37; Compl. ¶¶ 15, 16.)

Defendant Axis Surplus Insurance Company ("Axis") also insured Schaefer at the time of the firework incident. (SOF ¶ 28; Axis Policy [Dkt. 1-2].) Axis issued an "Excess Policy" covering claims that exceed the coverage provided by Lexington's Primary Policy. (Axis Mem. [Dkt. 39] ¶ 11; Axis Policy at 23.) The Excess Policy is limited to $4 million per occurrence and in

the aggregate. (Axis Mem. ¶ 10; Axis Policy at 1, 23.) Axis has paid under this policy to satisfy the judgments Kathryn and Alexander received, but it is not known exactly how much Axis has paid. (Compl. ¶¶ 15, 16.)

Plaintiffs filed suit seeking declaratory judgment as to whether the Underlying Complaint alleges a single occurrence or multiple occurrences under the Primary Policy. (Compl. at 11.) Plaintiff motioned for summary judgment, arguing that the Underlying Complaint alleges nineteen occurrences. Lexington cross-motioned for summary judgment arguing that the Underlying Complaint alleges only a single occurrence. Axis cross-motioned for summary judgment seeking a declaration that its indemnification obligation is limited to $4 million, regardless of the number of occurrences alleged. The parties briefed these motions and orally argued at a hearing on April 7, 2016. Accordingly, these motions are ripe for disposition.

## II.        Standard of Review

Summary judgment is appropriate only if the record shows that "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A genuine issue of material fact exists if the evidence, when viewed "in the light most favorable

to the non-moving party," *Miller v. Leathers*, 913 F.2d 1085, 1087 (4th Cir. 1990), "is such that a reasonable jury could return a verdict for the nonmoving party," *Anderson*, 477 U.S. at 248.

On cross motions for summary judgment, the court must review each motion separately on its own merits. *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003). "When considering each individual motion, the court must take care to resolve all factual disputes and any competing, rational inferences in the light most favorable to the party opposing that motion." *Id.* (internal quotations and citation omitted).

Summary judgment is especially appropriate in this case because the construction of insurance contracts is a legal question well suited for resolution by the courts. *Clark v. Metro. Life Ins. Co.*, 369 F. Supp. 2d 770, 774 (E.D. Va. 2005); *see also Donegal Mut. Ins. Co. v. Baumhammers*, 595 Pa. 147, 155, 938 A.2d 286, 290 (2007) (noting interpretation of insurance contract is question of law "generally performed by the court").

Because jurisdiction is based on diversity, the Court applies Virginia's choice of law rules. *Marks v. Scottsdale Ins. Co.*, 791 F.3d 448, 451 (4th Cir. 2015). "In insurance cases, Virginia law looks to the law of the state where the insurance contract is written and delivered" as the source of

7

law.  *Id.*  The parties agree that the Primary Policy was
delivered in Pennsylvania and that Pennsylvania law governs.
(Hollis Mem. in Supp. [Dkt. 36] at 5; Lexington Mem. [Dkt. 41]
at 11 n.9.)

Under Pennsylvania law, the goal when construing and
applying an insurance contract is to effectuate the intent of
the parties as manifested by the language of the policy.  *Penn.*
*Nat. Mut. Cas. Ins. Co. v. St. John*, 106 A.3d 1, 14 (Pa. 2014).
The language of the policy "must be construed in its plain and
ordinary sense, and the policy must be read in its entirety."
*Id.*  When the language is plain and unambiguous, that language
is controlling.  If the policy contains an ambiguous term,
however, "the policy is to be construed in favor of the insured
to further the contract's prime purpose of indemnification and
against the insurer, as the insurer drafts the policy, and
controls coverage."  *Id.* (quoting *401 Fourth Street Inc. v.*
*Investors Ins. Grp.*, 583 Pa. 445, 454, 879 A.2d 166, 171
(2005)).

The present case affects whether Lexington will have a
duty to indemnify the Insured if the facts alleged in the
Underlying Complaint are proven at trial, i.e. Lexington's
"conditional obligation to indemnify in the event the insured is
held liable for a claim covered by the policy."  *Gen. Acc. Ins.*

8

*Co. of Am. v. Allen*, 547 Pa. 693, 706, 692 A.2d 1089, 1095 (1997); *Allstate Prop. & Cas. Ins. Co. v. Winslow*, 66 F. Supp. 3d 661, 670 (W.D. Pa. 2014). Because this is a prospective inquiry similar to determining an insurer's duty to defend, the Court confines its analysis to the terms of the Primary Policy and the allegations in the Underlying Complaint, assumed as true. *See Frog Switch & Mfg. Co., Inc. v. Travelers Ins. Co.*, 193 F.3d 742, 746 (3d Cir. 1999); *Baumhammers*, 595 Pa. at 155, 938 A.2d at 291.[5]

------

[5]      Pennsylvania law does allow an insurer to rely on some limited facts outside the underlying complaint to disprove its ultimate obligation to indemnify, even before trial or settlement reduces a claim to judgment. *See ACandS, Inc. v. Aetna Cas. & Sur. Co.*, 764 F.2d 968, 975 (3d Cir. 1985) ("If, at the outset of a particular action, it is properly established that the insurer cannot possibly be liable for indemnification because policy limits have been exhausted, then the policy language does not impose a duty to defend that action under Pennsylvania law."); *Strouss v. Fireman's Fund Ins. Co.*, No. Civ. A 03-5718, 2005 WL 418036, at *9 (E.D. Pa. Feb. 22, 2005) ("[A]n insurer is entitled to a declaratory judgment that it has no duty to indemnify when the insurer establishes as a matter of law that there is no conceivable way for the underlying claims to trigger coverage under the policy.  To help the court in making this determination, both parties may rely upon evidence outside the underlying complaint."); *see also Nationwide Ins. v. Zavalis*, 52 F.3d 689, 695 (7th Cir. 1995) (listing Pennsylvania cases looking beyond underlying complaint regarding duty to defend).  In the present case, it is unnecessary to consider such facts because parties agree that Lexington has exhausted its duty to defend and indemnify for a single occurrence related to the fireworks incident.

### III.        Analysis

Jurisdiction is proper under 28 U.S.C. § 1332 because all defendants are completely diverse from all plaintiffs and the amount in controversy exceeds $75,000.[6]  Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred within this district.

---

[6]      Plaintiffs are all individual citizens of Virginia. (Kathryn Compl. ¶ 1.)  Defendant Axis is a citizen of Illinois. (Compl. ¶ 3.)  Defendant Lexington is a citizen of Delaware and Massachusetts.  (*Id.* ¶ 2.)  Defendants Schaefer, Kimmel R. Schaefer, and Jacqueline Gass are all citizens of Pennsylvania. (*Id.* ¶¶ 4-6.)

Diversity of citizenship remains even if the Court looks beyond the pleadings to *sua sponte* realign the parties according to their interests in the "primary issue in controversy." *See U.S. Fidelity & Guar. Co. v. A&S Mfg. Co., Inc.*, 48 F.3d 131, 133 (4th Cir. 1995); *Indianapolis v. Chase Nat'l Bank*, 314 U.S. 63 (1941).  The primary issue in controversy is whether the Underlying Complaint alleges multiple occurrences, thereby obligating Lexington to defend and conditionally indemnify Insured on those claims.  With respect to that issue, the Hollises, the Insured, and Axis have an aligned interest in arguing that multiple occurrences are alleged.  *See A&S Mfg. Co., Inc.*, 48 F.3d at 134; *Mosby v. ALPS Property & Cas. Ins. Co.*, No. 3:15-cv-489, 2015 WL 5430366 (E.D. Va. Sept. 14, 2015); *Nationwide Mut. Ins. Co. v. 1400 Hampton Blvd., LLC*, No. 2:10cv310, 2010 WL 5476748 (E.D. Va. Dec. 2, 2010); (*see also* Axis Policy at 23 (noting coverage is only in excess of primary insurance coverage).)  Lexington is the only party in this proceeding with an interest in arguing that it has exhausted its policy limits with respect to Plaintiffs' injuries.  Thus, if the parties were realigned, citizens from Illinois (Axis), Pennsylvania (Schaefer, Kimmel Schaefer, and Jacqueline Gass), and Virginia (Hollises), would be completely diverse from Defendant Lexington, which is a citizen of Delaware and Massachusetts.

This case also presents a justiciable controversy that is properly resolved through declaratory judgment.  Federal standards guide the inquiry into the propriety of declaratory relief in federal courts.  *White v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 913 F.2d 165, 169 (4th Cir. 1990).  Declaratory judgment is available when there is a dispute creating a "case or controversy" within the meaning of Article III of the United States Constitution and the Declaratory Judgment Act, 28 U.S.C. § 2201(a).  *White*, 913 F.2d at 167.  The declaratory relief must also be prudentially appropriate because it will (1) clarify the legal relations in issue or (2) "terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Id.* at 168.  The present case satisfies both the actual controversy and the prudential requirements for declaratory judgment to issue.

In this case, tort claimants in a pending state court action seek declaratory judgment about the coverage of the alleged tortfeasor's primary insurance policy.  It is well recognized that a coverage dispute between tort claimants and the primary policy insurer creates a case or controversy within the meaning of Article III and the Declaratory Judgment Act, even before the tort claimant's allegations have been reduced to a judgment. *See, e.g.*, *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312

U.S. 270, 274 (1941); *White*, 913 F.2d at 169; *Vt. Mutual Ins. Co. v. Everette*, 875 F. Supp. 1181, 1185 (E.D. Va. 1995). Additionally, the declaration sought will resolve the controversy regarding Lexington's duty to defend and conditional duty to indemnify.  Lexington and Plaintiffs agreed at oral argument that Lexington has exhausted its policy obligations related to a single occurrence arising from the fireworks incident.  Thus, Lexington has a conditional duty to indemnify for injuries arising from the same incident only if the Court finds the Underlying Complaint alleges multiple occurrences. Consequently, declaratory judgment will clarify the parties' legal relations. *See White*, 913 F.2d at 169.  In sum, this declaratory judgment action presents a justiciable issue as to whether the allegations in the Underlying Complaint, assumed as true, assert a single "occurrence" or multiple occurrences under Lexington's Primary Policy.

A.      The Underlying Complaint Alleges Only a Single
        Occurrence

        Parties agree that Pennsylvania law governs the definition of "occurrence" in this case, but parties vastly disagree about the result of applying that law to the Underlying Complaint.  Plaintiffs contend that the Underlying Complaint alleges nineteen occurrences, corresponding with the number of duties that Schaefer, its president, and employee Gass allegedly

12

breached.  Those breaches include negligently selecting and purchasing the fireworks, violating laws and regulations in the import of the fireworks, failing to test the fireworks before deployment, disregarding indications that the location for the fireworks show was unsafe, failing to set the crowd back at a safe distance from the launch area, violating Schaefer's own plan for the fireworks show, negligently training its employees, and other similar allegations.  (*See* Hollis Mem. in Supp. at 8.)

In contrast to Plaintiffs' long list of "occurrences," Lexington argues that Plaintiffs' injuries arise from one occurrence: the explosion of the firework shell within the crowd.  (Lexington Reply [Dkt. 46] at 1.)  The Court agrees with Lexington and will grant summary judgment in its favor.

Despite the parties' disagreement about the application of law to these facts, both parties recognize that Pennsylvania applies a "cause approach" to defining occurrences for liability insurance purposes.  Under the cause approach, courts "consider whether there is a single cause or multiple causes for the losses sustained." *Cf. Donegal Mut. Ins. Co. v. Baumhammers*, 595 Pa. 147, 159, 938 A.2d 286, 292 (2007).  More specifically, courts ask if there "was but one proximate, uninterrupted, and continuing cause which resulted in all of the injuries and damage." *D'Auria v. Zurich Ins. Co.*, 507 A.2d 857,

13

860 (Pa. Super. Ct. 1986).  The cause approach stands in contrast to the "effects approach," which "calculate[s] the number of occurrences by looking to the effect of the accident or, in other words, how many individual claims or injuries resulted therefrom."  *Baumhammers*, 938 A.2d at 292.

Applying the cause approach in accordance with the Pennsylvania Supreme Court's most recent interpretation of the test leads to the unambiguous conclusion that the Underlying Complaint alleges only a single occurrence.  In *Kinney-Lindstrom v. Medical Care Availability & Reduction of Error Fund*, the Pennsylvania high court stated that the number of causes depends on "whether there is one or multiple instances of professional negligence that caused the harm alleged" and "each instance of negligence must be associated with a distinct injury."  621 Pa. 52, 72, 73 A.3d 543, 556 (2013).[7]  The distinct-injury requirement is particularly important to the present case because that element is so clearly lacking from the Underlying Complaint.  In *Kinney-Lindstrom*, the court found that two

---

[7]      Plaintiffs and Lexington both rely on *Kinney-Lindstrom* without distinguishing the case as an interpretation of an insurance statute, rather than an insurance policy.  The Court does not find that distinction meaningful here.  *See Kinney-Lindstrom*, 621 Pa. at 72, 73 A.3d at 556 ("[T]here is no reason for 'occurrence' to be construed in the MCARE Act in a manner markedly different from the way the term was interpreted in *Donegal*.").

occurrences could arise from allegations that each of two twins, while in the womb, "became infected by different organisms at different times, and that Dr. S. was negligent in failing to diagnose and treat each separate condition." *Id.* The mere fact that two children were injured did not provide evidence of "distinct injuries," as the number of victims is not determinative in the cause analysis. *See Baumhammers*, 595 Pa. at 165, 938 A.2d at 165 ("[T]he fact that there were multiple victims does not determine the limits of Parents liability coverage . . . .").) Instead, distinct injuries were present because each child suffered two temporally and qualitatively distinct injuries—infections from different organisms occurring at different times. *See Kinney-Lindstrom*, 621 Pa. at 72, 73 A.3d at 556 ("[T]here may be two separate instances of professional negligence causing distinct damages to *each* twin, and, thus, two occurrences." (emphasis added)).

In contrast to *Kinney-Lindstrom*, the Underlying Complaint in the present case does not satisfy the distinct-injury requirement.[8] The allegations of negligence in this case

---

[8] Of course, even alleging distinct injuries is not sufficient to establish multiple occurrences, as the injuries also must be proximately caused by multiple instances of professional negligence. *See Appalachian Ins. Co. v. Liberty Mut. Ins. Co.*, 676 F.2d 56, 61 (3d Cir. 1982) ("The fact that there were multiple injuries and that they were of different

are all associated with the exact same injuries, which occurred contemporaneously due to the explosion of the firework shell. Without any allegation of distinct injuries attributable to the nineteen allegedly wrongful acts, the Insured's negligence forms only a single cause.  Therefore, under *Kinney-Lindstrom*, the Underlying Complaint alleges only a single occurrence.

Applying the cause approach under the more traditional "proximate cause" terminology results in the same conclusion. In that inquiry, courts "focus on the act of the insured that gave rise to their liability," *Baumhammers*, 595 Pa. at 162, 938 A.2d at 295, to determine if there was "one proximate, uninterrupted, and continuing cause which resulted in all the injuries and damage."  *D'Auria v. Zurich Ins. Co.*, 507 A.2d 857, 860 (Pa. Super. Ct. 1986); *see also Flemming* ex rel. *Estate of Flemming v. Air Sunshine, Inc.*, 311 F.3d 282 (3d Cir. 2002) (applying this standard); *Appalachian Ins. Co. v. Liberty Mutual Ins. Co.*, 676 F.2d 56, 61 (3d Cir. 1982) (same).  When conducting this analysis, it is "the general rule that where a series of related acts of negligence results in an injury, those acts are considered a single 'occurrence' for the purposes of

---

magnitudes and that injuries extended over a period of time does not alter our conclusion that there was a single occurrence.  As long as the injuries stem from one proximate cause there is a single occurrence.")

16

determining coverage limits under an insurance policy."
*Evanston Ins. Co. v. Ghillie Suits.com, Inc.*, No. C 08-2099,
2009 WL 734691, at *7 (N.D. Cal. Mar. 19, 2009).

Courts applying this approach do not divide a
proximate cause into each particularized but-for cause that
contributed to the ultimate injury.  *See, e.g.*, *Real Legacy
Assurance Co. v. Afif*, 409 F. App'x 558, 562 (3d Cir. 2011)
(noting "cause theory is designed to avoid the trap of infinite
regression" that would result from parsing the cause of an
injury "into several distinct stages, each describing the
ultimate cause in greater and greater detail"); *Auto-Owners Ins.
Co. v. Munroe*, 614 F.3d 322, 326 (7th Cir. 2010) (concluding
that no Illinois court applying the cause approach "has held
that a single claim or injury can give rise to multiple
occurrences merely because several acts of negligence combined
to produce a single result"); *D'Auria*, 507 A.2d at 861-62.  For
example, in *Western World Insurance Co. v. Wilkie*, a district
court rejected tort claimants' argument that multiple occurrence
arose from children becoming infected with *E. coli* at a petting
zoo due to the zoo operator's "failure to properly clean the zoo
area, failure to use a barricade to separate the animals from
the children, failure to prevent hand-to-mouth activities,
inadequate signage, and failure to provide proper hand washing

17

stations." *Id.* at *3. Instead, the court found a single occurrence because the presence of *E. coli* was the "general harmful condition to which defendants were exposed, and the cause of this condition was [defendant's] ongoing negligence." *Id.* at *5. Similarly, a Pennsylvania appellate court expressly condemned the practice of dividing a proximate cause of injury into particularized acts, characterizing it as an "artificial and arbitrary division" that would "forsake common sense." *D'Auria*, 507 A.2d at 861.

In accordance with those cases, the Underlying Complaint alleges only one occurrence. The Insured's wrongful actions and inaction caused a firework shell to explode dangerously close to the Hollises, contemporaneously causing them injury. Although many breaches of duty contributed to this accident as but-for causes, those breaches involved only one proximate cause of injury: the negligent explosion of the firework shell. Consequently, the Underlying Complaint alleges only a single occurrence under Pennsylvania law.

Plaintiffs' reliance on the Eleventh Circuit's interpretation of Florida law in *Mid-Continent Casualty Co. v. Basdeo*, does not compel a different result. 477 F. App'x 702 (11th Cir. 2012). In *Basdeo*, the court found that multiple occurrences arose from the insured party's negligent performance

18

of a roof construction contract, which caused rain to damage the building's interior. *Id.* at 708. The court found three causes of the damage: (1) negligently placing tarps on the building in a way that caused holes and allowed water to enter; (2) leaving a slanted section of the roof open and exposed to rainfall; and (3) leaving a flat section of the roof open and exposed. *Id.* at 704. The *Basdeo* scenario is different from the fireworks incident because each act of negligence in *Basdeo* is associated with a distinct injury, i.e. rain entering a different part of the building through a distinct opening. Furthermore, the *Basdeo* court could not identify any unifying proximate causal link between the three acts of negligence. In the present case, by contrast, all of the acts of negligence and gross negligence alleged culminated in a single event causing contemporaneous injury, the shell explosion. Thus, *Basdeo* is distinguishable from the present facts.

There is also no support for Plaintiffs' argument that the number of alleged tortfeasors is determinative of the number of occurrences. No case identified by any party in these proceedings emphasizes the number of alleged tortfeasors as the relevant focus of the cause approach. The Pennsylvania Supreme Court did not place any significance on the number of tortfeasors in *Donegal Mutual Insurance Co. v. Baumhammers*, when

it concluded that a single cause arose from two parents negligently failing to confiscate their son's weapon and/or failing to notify enforcement authorities of the son's unstable condition.  595 Pa. 147, 163 938 A.2d 286, 295.  Furthermore, in *Auto-Owners Insurance Company v. Munroe*, the Seventh Circuit explicitly rejected the argument that three occurrences arose from the negligent acts of three truck drivers causing a single accident.  614 F.3d 322, 326 (7th Cir. 2010).  The Court finds those opinions persuasive and declines Plaintiffs' invitation to find multiple occurrences based on the fact that two individuals and a corporate entity were allegedly negligent in this case.

In summary, taking the allegations of the Underlying Complaint as true, Plaintiffs allege only a single occurrence within the meaning of the Primary Policy.  As parties agreed at oral argument, Lexington has no duty to defend or to indemnify the Insured for the allegations in the Underlying Complaint because Lexington has already exhausted its $1 million Primary Policy obligation with respect to this occurrence.  Accordingly, the Court will grant summary judgment to Lexington.

B.      Axis's Cross-Motion for Summary Judgment Will Be
        Denied as Nonjusticiable

In addition to the cross-motions discussed above, Axis Surplus Insurance Company also filed a cross-motion for summary judgment.  Axis appears to seek a declaration that its

20

obligation under its Excess Policy is limited to $4 million, regardless of how many occurrences are alleged.  Axis did not, however, file a counterclaim or crossclaim for declaratory judgment seeking this declaratory relief.

The Court will deny Axis's motion because it involves an issue that is presently nonjusticiable.  As described more fully above, declaratory judgment is only proper when there is a definite and concrete dispute involving the legal relations of parties with adverse legal interests and when the judgment would clarify or terminate that dispute.  *White v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 913 F.2d 165, 168 (4th Cir. 1990).  Axis and Plaintiffs both recognize that the Complaint in this case does not raise a dispute regarding the scope of the Excess Policy.  Plaintiffs concede that questions regarding the Axis policy are "simply irrelevant and not at issue under the pleadings of this case."  (Hollis Reply to Axis [Dkt. 43] at 3.)  Similarly, Axis argues that under its policy, "it is irrelevant how many occurrences are claimed by Plaintiffs."  (Axis Mem. in Supp. [Dkt. 38] at 3.)  Furthermore, it is purely speculative whether any party would ever argue that Axis's policy obligations depend on the number of occurrences alleged or proven in Plaintiffs' lawsuit.  Consequently, Axis's cross-motion does not involve a justiciable issue and will be denied.

21

*Cf. Nat'l Cas. Ins. Co. v. Inc. Village of Irvington*, No. 92 CIV. 2014, 1997 WL 411928, at *4 (S.D.N.Y. 1997).

### IV.        Conclusion

For the reasons stated above, the Court will grant Lexington's cross-motion for summary judgment, deny Plaintiffs' motion for summary judgment, and deny Axis's cross-motion for summary judgment.  Consequently, all justiciable disputes in this case are resolved.

An appropriate order will issue.

/s/

April 12, 2016                          James C. Cacheris
Alexandria, Virginia        UNITED STATES DISTRICT COURT JUDGE